# EXHIBIT A

**Philip A. Seplow, Esq.**
Attorney #004859
518 East Willetta Street
Phoenix, AZ 85004
E-Mail: screenwriter2@earthlink.net
Phone: (602) 254-8817
Fax     (602) 254-0271

**Attorney for Plaintiff**

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| KATRINA WILLIAMS, a single woman and her Minor Children, SM, KC-M, CW-C )<br><br>Plaintiffs, )<br><br>vs. )<br><br>PAUL BABEU, Pinal County Sheriff, an individual; G. Kindsvater, Deputy Sheriff Pinal County; PINAL COUNTY SHERIFF'S DEPARTMENT, an Arizona Corporation; Pinal County Board of Supervisors, an Arizona Corporation, Walmart, a foreign Corporation doing business in Arizona, DALLAS REXSTREW, an individual, JOHN AND JANE DOE, BLACACRE CORPORATION, )<br><br>Defendants. ) | Case No.  CV201601546<br><br>S U M M O N S<br><br>(Tort, Non-Motor Vehicle) |

**WARNING: This is an official document from the court that affects your rights.  Read this carefully.**

**If you do not understand it, contact a lawyer for help.**

FROM THE STATE OF ARIZONA TO: **Paul Babeu**

1.  A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this "Summons".

1

2. 2. If you do not want a judgment or order taken against you without your input, you must file an "Answer" or a "Response" in writing with the court, and pay the filing fee. If you do not file an "Answer" or "Response" the other party may be given the relief requested in his/her Petition or Complaint. To file your "Answer" or "Response" take, or send, the "Answer" or "Response" to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374. Mail a copy of your "Response" or "Answer" to the other party at the address listed on the top of this Summons.

3. If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, **your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS** from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court at the address listed in Paragraph 2 above.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

SIGNED AND SEALED this date: 10/11/16

Clerk of the Superior Court **AMANDA STANFORD**

By_____

Deputy Clerk_____

2

**Philip A. Seplow, Esq.**
Attorney #004859
518 East Willetta Street
Phoenix, AZ 85004
E-Mail: screenwriter2@earthlink.net
Phone:(602) 254-8817
Fax     (602) 254-0271

Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| KATRINA WILLIAMS, a single woman and her Minor Children, SM, KC-M, CW-C | Case No.  CV201601546 |
| Plaintiffs, | S U M M O N S |
| vs. | (Tort, Non-Motor Vehicle) |
| PAUL BABEU, Pinal County Sheriff, an individual; G. Kindsvater, Deputy Sheriff Pinal County; PINAL COUNTY SHERIFF'S DEPARTMENT, an Arizona Corporation; Pinal County Board of Supervisors, an Arizona Corporation, Walmart, a foreign Corporation doing business in Arizona, DALLAS REXSTREW, an individual, JOHN AND JANE DOE, BLACACRE CORPORATION, | |
| Defendants. | |

**WARNING: This is an official document from the court that affects your rights.  Read this carefully.**

**If you do not understand it, contact a lawyer for help.**

FROM THE STATE OF ARIZONA TO: **Pinal County Sheriff's Department**

1.   A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this "Summons".

1

2.   2. If you do not want a judgment or order taken against you without your input, you must file an "Answer" or a "Response" in writing with the court, and pay the filing fee. If you do not file an "Answer" or "Response" the other party may be given the relief requested in his/her Petition or Complaint. To file your "Answer" or "Response" take, or send, the "Answer" or "Response" to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374. Mail a copy of your "Response" or "Answer" to the other party at the address listed on the top of this Summons.

3.   If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, **your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS** from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.   You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court at the address listed in Paragraph 2 above.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

SIGNED AND SEALED this date:  10/11/16

AMANDA STANFORD
Clerk of the Superior Court

By_____

Deputy Clerk_____

2

1

Philip A. Seplow, Esq.
Az Bar No. 004859

2

518 East Willetta Street

3

Phoenix, Arizona 85004-1739
screenwriter2@earthlink.net

4

Tel:  (602) 254-8817

5

Fax:  (602) 254-0271

6

**Attorney for Plaintiff**

7

8

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9

IN AND FOR THE COUNTY OF PINAL

10

11

KATRINA WILLIAMS, a single woman,
and her Minor Children, SM, KC-M, CW-C

Case No.: *CV201601546*

12

Plaintiffs,

**COMPLAINT**

13

vs.

(Tort – Non-Motor Vehicle)
**Jury Trial Requested**

14

**Paul Babeu**, Pinal County Sherriff, an
individual; **G. Kindsvater**, Deputy Sheriff,

15

Pinal County, an individual; **Pinal County**

**DANIEL A. WASHBURN**

16

**Sheriff's Department**, an Arizona
Corporation; **Pinal County Board of**

17

Supervisors, an Arizona Corporation; **Wal-**

18

**Mart**, A foreign Corporation doing business in
Arizona; **Dallas Rexstrew**, an individual,

19

**John and Jane Doe, Blackacre Corporation,**
Defendants.

20

21

PLAINTIFF Katrina Williams, a single woman, for herself and by and for her three

22

minor children as custodial parent, allege as their cause of action against the named

23

24

Defendants the following:

25

**PARTIES TO THIS ACTION**

26

1.  The events alleged herein occurred within the jurisdiction of this Court.

27

28

– 1 –

2. Plaintiffs are African-American, and were at all relevant times residents of Pinal County, Arizona.

3. Defendant Paul Babeu ("Babeu") is the duly elected Sheriff of Pinal County, Arizona. He is an officer of Pinal County and has responsibility over the policies, practices, customs, and training of the Pinal County Sheriff's Office (PCSO) personnel acting pursuant to A.R.S. § 11-441(D). Babeu is the final decision maker for Pinal County on matters of law enforcement. He is sued in his individual and official capacities.

4. Defendant Babeu acted by and through his employees or agents and is responsible for their actions that occurred in the course and scope of their employment or contractual relationship.

5. Defendant G. Kindsvater, a deputy sheriff with PCSO, is being sued in his individual and official capacities, as a result of the acts he performed within the course and scope of his employment, while employed with PCSO.

6. Defendant Pinal County, Arizona, is a political subdivision formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes. Pinal County is liable for the practices and policies of Defendant Babeu, the final decision maker for law enforcement operations in the County, as well as for the actions of each member of the PCSO.

7. The County is also liable for Defendant Babeu's failure to adequately train PCSO deputies and posse members on the constitutional limitations of their powers to stop, arrest, detain, and question members of the public, or the need to avoid unnecessary harm, humiliation or deprivation of the basic civil rights guaranteed to those persons.

Pinal County is responsible for all actions of the officers, agents, and employees of Pinal County.

8.  Defendant Pinal County is responsible for all of its employees, including Sheriff Deputies.

9.  All are individuals that were employees or agents of Defendant Pinal County at all relevant times, and acted within the course and scope of their employment as related to the allegations herein.

10. Defendant Wal-Mart is incorporated in Delaware, doing business in Arizona as a foreign corporation, with its place of business located at 1725 West Hunt Highway, San Tan Valley, AZ, 85143, and is liable for the actions of its employees during the course and scope of their employment.

11. Defendant Dallas Rexstrew is being sued in his individual and official capacities, as a result of the acts he performed within the course and scope of his employment, while employed with Wal-Mart, located at 1725 West Hunt Highway, San Tan Valley, AZ, 85143.

12. John and Jane Doe are individuals who may be liable to the Plaintiffs who are unknown at this time, and Blackacre Corporation may be a corporation or business entity who is liable to the parties at this time, which may not be known to the Plaintiffs. When the identities of John Doe, Jane Doe and Blackacre Corporation are discovered, Plaintiffs will file leave to amend the proper names and function as to why they are defendants.

13. Venue, at least for filing purposes, is appropriate in this Court.

14. The actions alleged in this Complaint constitute intentional infliction of emotional distress, negligent infliction of emotional distress, assault, fraud and deprivation of civil rights.

15. Defendants owed Plaintiffs a duty of care, established under Arizona law.

<u>ACTIONS OF DEFENDANTS</u>

16. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 15.

17. On September 12, 2015, Katrina and her minor children were shopping at the Wal-Mart Supercenter, located at 1725 West Hunt Highway, San Tan Valley, AZ 85143. While in the store, Katrina's minor daughter, SM, aged 12, took a non-activated virtual currency card (IMVU Card), valued at $10.00 when activated by a cashier, and placed it inside her purse.  SM also took a package of lip balm, valued at less than $2.00, removed the product from the package, and placed the product in her purse, discarding the empty packaging on a shelf.

18. Katrina was not aware of these actions by her daughter SM.

19. Katrina paid for her groceries and the family exited the store.  Immediately, the family was surrounded by numerous Wal-Mart personnel, including Jenny Taylor, a Wal-Mart asset protection employee.  Ms. Taylor told Katrina that SM had been observed placing unpaid for items in her purse.  Katrina took the purse from SM, removed the unpaid items, and handed them to Ms. Taylor.

20. Ms. Taylor insisted that Katrina and SM return to the store, but Katrina refused. Because of the time of day and extreme heat, (it was approximately 4:20 pm, and the outside air temperature was approximately 107 degrees), Katrina stated that she needed to take her minor children and groceries home.

21. Katrina offered her contact information to Ms. Taylor, explaining that the items taken by SM were returned, and she did not want to leave her 12-year-old daughter alone at the store while she took care of her other minor children and groceries. Katrina stated Wal-Mart could contact the family at home if they so desired. (The family lives approximately 4-miles from the Wal-Mart and are regular customers.)

22. At this point Katrina proceeded with her children to the family van, loaded the groceries and proceeded to exit the Wal-Mart parking lot. Because the police had been called, Katrina's van was pulled over by Defendant Kindsvater within moments, across the street (Hunt Highway) from the Wal-Mart, next to a Dunkin Donuts store.

23. Katrina parked the van in an empty parking space under a shade tree. Because of the excessive heat that day, as well as the children and the groceries being in the vehicle, she left the engine running in order to keep the interior cooled. A Dunkin Donuts van was parked in front of her, and Kindsvater pulled up behind her, essentially blocking her in.

24. Upon exiting his patrol car, Kindsvater immediately began yelling "get out of the car now!" Due to the very aggressive and hostile manner in which he approached, Katrina feared for her own safety as well as the safety of her children. She rolled down a window to speak with Kindsvater, but he just kept yelling "get out of the car now!"

25. Because of the confrontational and threatening manner in which Kindsvater approached the van, she refused his command to exit the vehicle and instead called 9-1-1 on her cell phone. SM and KC-M were both using their cell phones to videotape the officer's actions.

26. At that point, Kindsvater produced his expandable baton and shattered the driver's window of the van, striking Katrina and spraying glass all over the interior and its occupants.  The officer then opened the driver's side door and again ordered Katrina to exit.

27. In fear for her own safety and the safety of her three minor children, in shock from having her window smashed in, and still on the phone with 9-1-1, she remained seated. Kindsvater then deployed his Taser and applied it multiple times to Katrina, in front of her terrified minor children, while at the same time yelling "stop resisting arrest!"

28. SM and KC-M were both out of the van at this point and continued using their cell phones to videotape the attack on their mother.

29. Katrina, having been tased and still in a state of shock, stated she would exit.  She unfastened her shoulder restraint to get out of the van.  Kindsvater pulled her out and ordered her to the ground, but because of the pain she was in from the baton, the shattered glass and the Taser, she could not respond fast enough to please the enraged officer.

30. Kindsvater continued to tase Katrina, but because she could not immediately go to the ground, he threw her down onto some bushes with a 'leg-tackle', where she then rolled onto the heated surface, striking her head on a curb.  As he was forcibly applying handcuffs behind Katrina's back, SM ran up to Kindsvater and slapped him on the shoulder yelling "leave my mother alone!"

31. At this point, Defendant Rexstrew, who had been monitoring video surveillance at Wal-Mart and left his store across the street, crossing 6-lanes of traffic on Hunt Highway, appeared on the scene.  Katrina, bruised from the broken glass, baton, Taser

- 6 -

and bushes was now lying on the hot surface with her hands secured with handcuffs behind her back when Rexstrew jumped on Katrina's back, holding her to the hot ground by violently jamming his knee into her back with all his weight.

32. Kindsvater next turned his attention to SM, grabbing her arm so hard he lifted her from the ground. He forced handcuffs on the 12-year-old's wrists and dragged her by the handcuffs into his patrol car.

33. Several deputies now appeared on the scene. With the assistance of these additional officers, Katrina was painfully removed from the hot ground and forced into the back of a patrol car.

34. The deputies noticed blood on Katrina and requested an ambulance. While waiting for medical personnel, the officers on the scene confiscated both SM's and KC-M's cell phones and removed the sim, memory and SD cards. PCSO also retrieved surveillance video from several nearby businesses, including the Big-O Tire, Jimmy John's Subs, and Dunkin Donuts.

35. During this entire assault, 6-year-old CW-C remained seated, alone in the van, witnessing this vicious, traumatic attack upon his mother.

36. Katrina was taken to Banner Ironwood Hospital, where she was treated for her injuries.

37. The entire scene was observed by witnesses from the Jimmy John's Sandwich shop, the Dunkin Donuts store, and the Big O Tire store.

38. Wal-Mart reported that the value of the items allegedly taken by SM were valued at approximately $12.00. However, because the IMVU had no value until activated by a cashier, the actual value of the items taken and returned was less than $2.00.

39. Katrina spent three days in jail, and was charged with aggravated assault, resisting arrest, unlawful use of 9-1-1, and contributing to delinquency and dependency. All charges were subsequently dismissed.

40. SM was charged with aggravated assault on a police officer, shoplifting, and resisting arrest. All charges were subsequently dismissed.

41. Within days after the event, after Katrina was released from jail, she was contacted by Defendant Babeu. In recorded telephone conversations, Babeu made several offers of settlement in order to induce Katrina not file a law suit against Pinal County or the Sheriff's department, in violation of her civil rights.

42. Soon after, Babeu came to Katrina's residence, accompanied by his assistant as a witness, and pressured Katrina to sign a release. Katrina signed but was not given a copy of the release. Katrina was allowed to take a photograph of the release with her cell phone.

43. Defendants' actions caused injury to Plaintiff and her minor children.

**COUNT I:**
**DEFENDANT COMMITTED**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

44. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 43.

45. The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; (3) the conduct must be the cause of distress; and (4) plaintiff must suffer severe emotional distress.

46. Defendants intentionally and recklessly caused distress to Plaintiff's by taking a relatively minor allegation of shoplifting by a 12-year old child, and subsequently acting to the point where an adult and minor were accosted, tased, beaten and arrested.

47. A reasonable person would find that Defendants' conduct was "extreme" and "outrageous."   Given the facts and circumstances as reported by the responding officers, there was no need to break Plaintiff's window with a police baton, tase Plaintiff multiple times, force plaintiff onto a hot surface, and continue to hold Plaintiff face down on the hot surface through use of force after handcuffs had been applied. These actions were extreme and outrageous.

48. Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct.

49. Plaintiffs suffered severe emotional distress as a result of Defendants' conduct.

50. Plaintiffs suffered mental anguish, manifested as physical injury through headaches, stress, lack of sleep, heart issues, and pain, as well as emotional depression and anxiety.

51. The elements for the tort of intentional infliction of emotional distress have been met.

## COUNT II:
## DEFENDANTS COMMITTED
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 51.

53. Under Arizona Law, in order to pursue a claim of negligent infliction of emotional distress, the defendant's conduct must (1) have caused some kind of physical contact or impact (however minor) to the Plaintiff or closely related person; (2) the conduct must have occurred within the zone of danger so as to subject the Plaintiff to an

unreasonable risk of bodily harm created by the defendant; and (3) the Plaintiff must
have suffered actual harm in the form of grief, stress, or health related issues.

54. Defendant Kindsvater approached the family vehicle in a hostile and antagonistic
manner. He smashed the driver's window of the van, tased Katrina Williams multiple
times, forced her from the van and threw her onto bushes and a hot surface, all in front
of her 3 terrified minor children. These actions clearly meet the first element of
physical contact or impact to Plaintiff or a closely related person.

55. Katrina Williams was violently and unreasonably manhandled by Officer Kindsvater
and Dallas Rexstrew. Her three minor children were either in the van or in the process
of exiting the van, and were in close enough proximity to witness these actions against
their mother. The children were in fear for their own safety. Plaintiffs were clearly
within the zone of danger.

56. Katrina was taken to a local hospital for treatment of her injuries. Her daughter SM
was later seen by a doctor as a result of the injuries she sustained from Defendant
Kindsvater. KC-M and CW-C have suffered mental anguish and experience
nightmares and problems in school. KC-M has also begun wetting his bed as a result of
this trauma. The family has suffered physical and mental harm as a result of the
actions by Defendants Kindsvater and Rexstrew. Further, Mother's head trauma from
being thrown to the ground by Kindsvater is now more problematic.

57. Plaintiff observed injury to her minor children as well as suffered her own injuries, and
all suffered mental anguish manifested as physical injury within the zone of danger,
including heart problems, stress, stress related illnesses, and lack of sleep.

- 10 -

58. Plaintiffs were within the zone of danger so as to be subjected to an unreasonable risk of bodily and psychological injury created by Defendants.

59. The elements for the tort of negligent infliction of emotional distress have been met.

## COUNT III:
## DEFENDANTS COMMITTED ASSAULT

60. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 59.

61. The elements for the crime of assault are: (1) An act intended to create; (2) a reasonable apprehension; (3) of imminent harm; (4) that is either harmful or offensive.

62. The Defendant's conduct must present either a physical threat or offensive behavior to the Plaintiff.

63. Officer Kindsvater was called to the scene of an alleged shoplifting by a juvenile of merchandise valued by Wal-Mart at less than $12.00, but in reality, its true value was less than $2.00.

64. When Katrina was contacted by Kindsvater and instructed to pull over off the road, she immediately complied.

65. Instead of having a reasonable conversation with the mother of the alleged offender, Kindsvater approached the van in an aggressive, threatening and intimidating manner, smashed the window of Katrina's van, tased her multiple times, forced her from the van, threw her onto thorny bushes and a hot surface, placed her hands in handcuffs behind her back, and left her lying face down on the hot surface while allowing Rexstrew, a civilian, to kneel with all his weigh on Katrina's back.

66. Defendant Kindsvater unreasonably created reasonable apprehension and physical harm to Katrina Williams.

- 11 -

67. The elements for assault have been met.

## COUNT IV:
## DEFENDANTS COMMITTED FRAUD

68. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 67.

69. The basic elements used to prove fraudulent inducement are: (1) The Defendant intentionally made a false representation to the Plaintiff (an action, statement, or omission); (2) The misrepresentation was material to Plaintiff's decision to enter into a contract; (3) Plaintiff was reasonably justified in relying on such misrepresentation; and (4) Plaintiff suffered some degree of injury, usually economic harm.

70. Fraud in the formation occurs when: (1) a Defendant in a superior position; (2) proposes a contract of their own creation; (3) to a Plaintiff who is not competent to know or understand the contents of that contract; (4) with the intent of having Plaintiff agree to the contract.

71. Defendant Babeu intentionally contacted Katrina Williams soon after her release from Pinal County Jail, and made material representations to Katrina.

72. In recorded telephone conversations, Babeu tried to coerce Williams into accepting an offer of settlement, including offers to assist the family with Section 8 housing.

73. Defendant Babeu acted from a position of superiority and proposed a release form for Katrina to sign.

74. Defendant Babeu, in his official capacity as Sheriff of Pinal County, went to see Williams at her residence, along with his secretary. They brought the contract they wanted Williams to sign, but no copies of the contract. Williams was able to take a photo of the contract using her cell phone.

75. At the time Babeu went to see Katrina, she had just been released from jail, and was still suffering both physical and mental pain, as well as taking prescription medication.

76. Katrina, although not competent to sign any release, reasonably relied upon the representations made by Babeu.

77. The recorded telephone conversations between Defendant Babeu and Katrina, Babeu's presence at Katrina's residence days after her release from jail, and the physical and mental condition of Katrina at the time, demonstrate that the elements of both fraud in the inducement and fraud in the formation have been met.

## COUNT V:
## CIVIL RIGHTS VIOLATIONS

78. Plaintiffs herein incorporate the facts as stated in paragraphs 1 – 72.

79. Section 1983 of Title 42 of the United States Code provides that any person who (under color of any statute, ordinance, regulation, custom, or usage, of any State) deprives any citizen of the United States of any rights, privileges, or immunities secured by the United States Constitution, shall be liable to the party injured.

80. In asserting a claim under section 1983, the Plaintiff must prove that:  1) Defendant subjected the Plaintiff to conduct that occurred under color of state law; and 2) that conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

81. Plaintiffs bring this action against Defendants in both their professional and individual capacities.

82. The facts as stated herein demonstrate that Defendants acted with malice aforethought so as to deprive Plaintiffs of their Constitutional rights, privileges or immunities.

- 13 -

83. Defendants infringed upon Plaintiffs' <u>right against unwarranted search and seizures</u>, as guaranteed under the Fourth Amendment to the United States Constitution.

84. Defendants infringed upon Plaintiffs' <u>right to equal protection of the laws</u>, as guaranteed under the Fourteenth Amendment to the United States Constitution.

85. Defendants infringed upon Plaintiffs' <u>right not to be deprived of liberty without due process of law</u>, as guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

86. Defendants infringed upon Plaintiffs' <u>right to be free from excessive use of force by law enforcement officers</u>, as guaranteed under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

87. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs' Constitutional rights were violated, and Plaintiffs suffered harm.

88. Defendants' actions were performed with actual malice toward Plaintiffs, and with willful and wanton indifference to, and deliberate disregard for, the Plaintiffs' Constitutional rights.

89. Plaintiffs have been forced to pursue this action in search of justice, and to enforce the provisions of 42 U.S.C. §1983, and are therefore entitled to an award of reasonable attorney fees, pursuant to 41 U.S.C. §1988.

## REQUEST FOR JURY TRIAL

Trial by jury is hereby demanded in the above captioned Cause of Action.

- 14 -

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs requests that judgment be entered in their favor against Defendants in an amount to be determined at trial, which should include but not be limited to:

A.  Judgment in favor of Plaintiffs and against Defendants in an amount in excess of this Court's minimal jurisdictional amount;

B.  Punitive and exemplary damages;

C.  **Expenses incurred by Plaintiffs in their efforts to correct** and/or mitigate the harm suffered;

D.  An award of Plaintiffs' reasonable attorneys' fees and costs in prosecuting this action; and

E.  Any and all such other relief to which Plaintiff is entitled in law or equity.

F.  Such further relief as the Court deems just and proper.

Plaintiffs reserve the right to amend this Complaint as additional information becomes available.


**Respectfully submitted this 9th day of September 2016.**

PHILIP A. SEPLOW LAW OFFICES


By :_____

Philip A. Seplow, Esq.
18 East Willetta Street
Phoenix, Arizona 85004-1739
Attorney for Plaintiffs

*Original of the foregoing **filed***
*this 9th day of September 2016 with:*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clerk of the Court
Pinal County Superior Court
Florence, Arizona 85132

1 | Philip A. Seplow, Esq.
Attorney #004859
2 | 518 East Willetta Street
Phoenix, AZ 85004
3 | E-Mail: screenwriter2@earthlink.net          OCT 1 ? 2016
Phone: (602) 254-8817
4 | Fax    (602) 254-0271

5 | Attorney for Plaintiff

6 |            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7 |                IN AND FOR THE COUNTY OF PINAL

8 | KATRINA WILLIAMS, a single  )   Case No.   CV201601546
woman and her Minor          )
9 | Children, SM, KC-M, CW-C     )
                             )
10 |              Plaintiffs,    )
                             )
11 |       vs.                   )
                             )
12 | PAUL BABEU, Pinal County     )   CERTIFICATE REGARDING
Sheriff, an individual; G.    )   COMPULSORY ARBITRATION
13 | Kindsvater, Deputy Sheriff   )
Pinal County; PINAL COUNTY   )
14 | SHERIFF'S DEPARTMENT, an     )
Arizona Corporation; Pinal   )
15 | County Board of             )
Supervisors, an Arizona      )
16 | Corporation, Walmart, a      )
foreign Corporation doing    )
17 | business in Arizona,         )
DALLAS REXSTREW, an          )
18 | individual, JOHN AND JANE    )
DOE, BLACACRE CORPORATION,   )
19 |                             )
              Defendants.     )
20 | _____)

21 |         The undersigned certifies that the largest award sought

22 | by the complainant, including punitive damages, but excluding

23 | interest, attorney' fees, and costs does exceed the limits set by

24 | Local Rule for compulsory arbitration.  This case is not subject

25 | to the Uniform Rules of Procedure for Arbitration.

26 | / / /

27 | / / /

28 | / / /

                                  1

1 | KATRINA WILLIAMS, et al. v. PAUL BABEU, et al.
CASE NO. CV201601546
2 | CERTIFICATE REGARDING COMPULSORY ARBITRATION

3

4 |          DATED THIS 27th day of September, 2016.

5 |                    PHILIP A. SEPLOW, ESQ.

6

7 |          By:_____
                 Philip A. Seplow, Esq.
8 |              Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28